UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAYCO, INC., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CAUSE NO. 3:17-CV-458 RLM-MGG |
| | ) |
| NATIONAL INDOOR RV | ) |
| CENTERS LLC, *et al.*, | ) |
| | ) |
| Defendants | ) |

OPINION AND ORDER

Jayco, Inc. filed suit against National Indoor RV Centers, LLC ("NIRVC"), NIRVC-AZ, LLC ("National Arizona"), National Indoor RV Centers-GA, LLC ("National Georgia") and Angie Morell, alleging that they infringed on its Entegra Coach trademarks and engaged in unfair competition in violation of federal and state law and breached their dealership agreements when they used those trademarks to market and sell Entegra Coach motor homes in Texas without Jayco's permission. The defendants (collectively, "National") moved to dismiss the suit for lack of personal jurisdiction and improper venue. For the following reasons, the court grants their motion.

I. *Standard of Review*

When a dismissal motion raises the issue of personal jurisdiction, the plaintiff must establish personal jurisdiction over each of the defendants. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d

796, 799 (7th Cir. 2014); Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). The court can receive and weigh affidavits, exhibits and other evidence in determining whether it has personal jurisdiction, Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d at 782; Nelson v. Park Indus., Inc., 717 F.2d 1120, 1123 n.7 (7th Cir. 1983). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d at 783.

As with all motions to dismiss, the court must accept all well-pleaded facts alleged in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017). Any factual disputes in the affidavits must also be resolved in the plaintiff's favor. Tamburo v. Dworkin, 601 F.3d at 700; Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d at 783.

## II. *Factual Background*

The facts that follow are taken from the complaint, affidavits, and exhibits submitted in support of the parties arguments, are deemed to be true for purposes

of this motion, and, consistent with the standard outlined above, have been construed in a light most favorable to Jayco.[1]

Jayco is an Indiana corporation with its principal place of business in Middlebury, Indiana. National is a Delaware limited liability company, with its principal place of business in Plano, Texas, and is a citizen of Texas, Connecticut, and Utah.[2] National Arizona is an Arizona limited liability company and a wholly owned subsidiary of National, with its principal place of business in Phoenix, Arizona. National Georgia, another wholly owned subsidiary of National, is a Georgia limited liability company, with its principal place of business in Lawrenceville, Georgia. [Doc. Nos. 1 at ¶ 10 and 25-1 at ¶ 5, 6]. Angie Morell is a

---

[1] The evidence submitted in support of and opposition to the motion to dismiss included: (1) U.S. Patent and Trademark registration certificate for Entegra Coach [Doc. No. 1-1]; (2) U.S. Patent and Trademark registration certificate for the "EC" symbol [Doc. No. 1-2]; (3) Dealership Sales and Services Agreement between Entegra Coach and NIRVC-AZ [Doc. No. 1-3]; (4) June 2016 Line-Make Addendum between NIRVC-GA and Entegra Coach [Doc. No. 1-4]; (5) June 27, 2017 Declaration of Angelo Prieto, NIRVC's Chief Financial Officer, and Exhibits A-1 and A-2 attached thereto [Doc. Nos. 25-1 to 25-3]; (6) June 27, 2017 Declaration of Angie Morell [Doc. No. 25-4]; (7) June 27, 2017 Declaration of Jeffrey Hamilton and Exhibit C-1 attached thereto [Doc. Nos. 25-5 and 25-6]; (8) Report from the Indiana Secretary of State's website verifying Jayco's state of incorporation and principal office address [Doc. No. 30-1]; (9) July 10, 2017 Declaration of Michael Ritchie, Jayco's Vice President of Finance, and Exhibits 1-11 attached thereto [Doc. No. 30-2]; (10) July 10, 2017 Declaration of Joyce Skinner, Jayco's Customer Service Director for Entegra Coach [Doc. No. 30-3]; (11) July 13, 2017 Declaration of Brett Davis, the CEO of NIRVC [Doc. No. 35-1]; (12) July 13, 2017 Declaration of Tadd Jenkins, NIRVC's President [Doc. No. 35-2]; (13) July 14, 2017 Declaration of Hal Kendrick, NIRVC's Vice President [Doc. No. 35-3]; and (14) Angelo Prieto's July 14, 2017 Declaration [Doc. No. 35-4].

[2] A limited liability company's citizenship is the citizenship of each of its members. Thomas v. Guardsmark, LLC, 487 F.3d 531, 534 (7th Cir. 2007). NIRVC, LLC's members are identified in Angelo Prieto's June 27, 2017 declaration [Doc. No. 25-1 at 6(a)-(c)].

citizen of Texas. [Doc. Nos. 1 at ¶ 11 and 25-4 at ¶ 2]. The defendants don't reside in or have any members, employees, agents, offices, or real property in Indiana.

Jayco and Entegra Coach (a division of Jayco) design, manufacture, and sell motor homes through a network of independent dealers located throughout the United States. Entegra Coach is one of Jayco's registered trademarks, as are the Entegra Coach symbol ("EC" in script format inside a circle), and the model names of Entegra Coach motorhomes (Insigna, Aspire, Anthem, and Cornerstone).

In November 2016, National and Jayco entered into a Dealership Sales and Service Agreement that authorized National Arizona: "to sell and service Entegra Coach Products and represent itself as an Entegra Coach Dealer" in Maricopa and Gila Counties in Arizona (which the agreement calls the "Dealer Sales Territory"); "to purchase Entegra Coach product(s)…including accessories and repair parts"; and "to use Entegra Coach's trade names and trademarks in the promotion, sales, and service of Entegra Coach Products." The Agreement prohibited National Arizona from: "establish[ing] an Entegra Coach sales location [or] originat[ing] sales of Entegra Coach Products outside its Dealer Sales Territory", and "display[ing] product(s) for sale or marketing purposes within another Dealer's Sales Territory without the written consent of Entegra Coach." Negotiations about National's Arizona dealership took place by telephone, email, and during in person meetings in Texas, and National vice president Hal Kendrick executed the dealership application and dealership sales and service agreement in Texas, in November 2016.

National's Chief Financial Officer, Angelo Prieto, completed a dealership application for National Georgia at National's Texas office in April 2013, and Jayco alleges that it executed a dealership agreement that was "substantially similar" to the National Arizona agreement.[3] On June 29, 2016, Brett Davis, the CEO for National and its subsidiaries, signed a "Line-Make Addendum Page" at the Texas office, agreeing that National Georgia would "maintain in stock or on order" a minimum of four Entegra Coach "Insignia Class A Motorhomes" at its Lilburn, Georgia location, and would "concentrate its best efforts toward attaining the designated target retail performance objective [a minimum of 16 units annually]."

Under those agreements, National Arizona and National Georgia are licensed dealers for Entegra Coach. National also sells motor homes in Lewisville, Texas, but it isn't licensed to sell Entegra Coach motor homes there.

Between August 2013 and June 2017, National ordered 251 Entegra Coach motor homes from Jayco (valued at $77.2 million) through Ted Cook, a Jayco saleperson located in Middlebury, Indiana. About the same time, National also purchased parts valued at $391,836.00, using Jayco's online Dealer Portal, which is "hosted" in Middlebury, Indiana. The parts were invoiced from Jayco's offices

---

[3] Jayco didn't indicate when the National Georgia dealership agreement as signed, attach a copy of the agreement to the complaint, or submit a copy in response to the motion to dismiss. National president Tadd Jenkins attests that National doesn't have a copy of any dealership sales and service agreement for the Georgia dealership, but states that it "is licensed to sell Entegra coaches in Georgia." The court assumes for purposes of the motion to dismiss, that National has a dealership agreement that contains similar terms to those in National Arizona's agreement.

in Indiana to National's primary administrative office in Plano, Texas, and were shipped to Georgia, Arizona, and Texas.

National presented evidence that all orders for Entegra Coach motor homes were processed and forwarded from its Texas office, and that all of those motor homes were sold by National Arizona in Arizona or by Georgia in Georgia. Jayco hasn't presented any evidence to the contrary.

Preauthorization request for warranty work and warranty claims were submitted online, and were processed at Jayco's warranty center in Indiana. Joyce Skinner, Jayco's Director of Customer Service for Entegra Coach, attests that National submitted 3,898 preauthorization request between July 2015 and June 2017; that National Georgia submitted 1,021 warranty claims and was paid $754,119.67 for those claims between November 2013 to June 2017; and that National Arizona submitted 41 warranty claims between April and June 2017, and was paid $22,495.81 for those claims.

At Jayco's request, National registered and/or sent six service technicians to Indiana for training on Entegra Coach products between 2014 and 2017.

When Jayco received a complaint from Motorhome Specialist, its dealer in Dallas, Texas, that National was selling Entegra Coach motor homes from its Lewisville, Texas location (which is within Motor home Specialists' assigned territory), Jayco sent a private investigator to make inquiries.

The complaint alleges in pertinent part that:

• On or about May 9, 2017, a private investigator hired by Jayco visited NIRV[C]'s Lewisville location. The [investigator] inquired about purchasing an Entegra Coach. Initially, [a National] salesperson, Stephanie Lopez, told the [investigator] that [National] was not allowed to sell Entregra Coach motorhomes from the Texas location. Lopez told the [investigator] that they would fly a buyer to [National's] locations in Georgia or Arizona to purchase an Entegra Coach. Lopez then showed a 2017 Entegra to the [investigator]. Lopez told the [investigator] that she would introduce the [investigator] to Angie Morell, who was a salesperson on contract, and not an employee of [National]-TX, so that Morell could sell an Entegra Coach to the [investigator]. However, Morell's [National]-TX business card shows that she is an "RV Lifestyle Specialist" for [National]-TX, the same title that Lopez has. Morell has an office and phone extension at the Lewisville location.

• Lopez told the [investigator] that she could not technically have any Entegra Coach brochures but that Morell had "stashed some away for us." Lopez told the [investigator] that she would not get a commission if Morell sold the [investigator] an Entegra Coach, but that Lopez would be "taken care of" by Morell. Lopez told the [investigator] that she could sell an Entegra Coach, including all the paperwork involved, but that she would have to take delivery at another location. Lopez then introduced the [investigator] to Morell.

• When the [investigator] met with Morell, Morell pulled "sample boards" of Entegra Coach interior samples out from under her desk. Morell told the [investigator] that she kept them under her desk because "she can't keep them out."

• Morell offered to show the [investigator] an Entegra Coach that was currently on the lot in Lewisville. Morell told the [investigator] that Texas had really strict dealership laws and they could buy through Lewisville, but take delivery in Georgia or Arizona.

• Morell told the that she would negotiate a price Entegra Coach and get approval from [a National] manager.

• Morell took the [investigator] to a room that contained a sales board identifying current opportunities for [National] sales people in Lewisville. The board showed Morell's sales and showed at least 12 new Entegra Coach being sold by Morell. Morell emailed the [investigator] marketing materials containing the Entegra Coach trademarks.

[Doc. No. 1 at ¶¶ 21-26].

Ms. Morell is, by all accounts, good at her job. Between June 29, 2015 and December 10, 2016, she sold 52 Entegra Coach motor homes for National Arizona and National Georgia in Arizona and Georgia to customers residing throughout the United States and Canada.[4] Ms. Morell's sales made her eligible for Entegra Coach's Chairman's Club Sales Incentive Program, and at some point after December 2016 she submitted a claim to Jayco for a ring and Rolex watch based upon those sales. Jayco, in turn, sent her both the ring and the watch in recognition of her "superior dedication in selling [Entegra Coach] motor coaches."

In March and May 2017, Jayco demanded that National stop selling Entegra Coach and using its trademarks in Texas. National declined, and in June 2017, Jayco sent National Arizona and National Georgia a notice of default and termination of the Dealer Sales and Service Agreements. National responded on June 7, 2017 by suing Jayco in the District Court of Collin County, Texas (Cause No. 417-02634-2017) alleging fraud in the inducement, negligent misrepresentation, breach of contract, warranty violations under Georgia law, and business disparagement. A week later, Jayco filed this suit against Ms. Morell, National and its subsidiaries, asserting claims of unfair competition and trademark infringe-

---

[4] Jayco submitted a list of Ms. Morell's customers and their addresses which shows that they resided in 19 different states (including one in Indiana) and/or Canada. But Tadd Jenkins, the President of National and its subsidiaries, attests in his affidavit that Ms. Morell's sales and all other Entegra Coach motorhomes sales were made "by National Arizona in Arizona or by National Georgia in Georgia." Jayco hasn't presented any evidence to the contrary.

ment under federal and state law and breach of contract. The defendants have moved motion to dismiss this case for lack of personal jurisdiction and improper venue.

III. *Discussion*

This court has personal jurisdiction over the National defendants and Ms. Morell "if either federal law or the law of the state in which the court sits authorizes service of process to [each] defendant." Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010); Fed. R. Civ. P. 4(k)(1)(A). The federal statutes at issue in this case don't authorized nationwide service of process, *see* Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc., 751 F.3d at 800; be2, LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011), so personal jurisdiction is governed by Indiana's long-arm statute, which extends personal jurisdiction to the outer limits of the Fourteenth Amendment's Due Process Clause. Ind. Trial Rule 4.4(A); Reed v. Int'l Union of UAW, 945 F.2d 198, 201 (7th Cir. 1991); L.H. Carbide Corp. v. Piece Maker Co., 852 F.Supp. 1425 (N.D. Ind. 1994). In deciding whether the exercise of personal jurisdiction comports with the Due Process Clause, "the primary focus . . . is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. 1773, 1779 (2017). Personal jurisdiction exists when each of the defendants has "certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Stated differently, each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." Tamburo v. Dworkin, 601 F.3d 693, 700–01 (7th Cir. 2010) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

There are two types of personal jurisdiction–general and specific. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. at 1780. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014).

> For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.

*Id.* (citations and alterations omitted).

To exercise specific jurisdiction, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. at 1780 (quoting Daimler AG v. Bauman, 134 S.Ct. at 754).

> [T]here must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." For this reason, 'specific jurisdiction is confined to

adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

Id. (quoting Goodyear Dunlap Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. at 1781; see Goodyear Dunlap Tires Operations, S.A. v. Brown, 564 U.S. at 931, n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Jayco doesn't contend that general jurisdiction exists, nor does it appear likely that it could exist based on the facts presented. Jayco contends that the court has specific jurisdiction over the defendants: Jayco says that National, National Arizona, and National Georgia subjected themselves to specific jurisdiction in Indiana when they:

- entered into dealership agreements with Jayco;

- purchased Entegra Coach motorhomes from Jayco valued at more than $81 million;

- purchased over $390,000 in parts from Jayco;

- submitted over 3,800 pre-authorization requests to Jayco for warranty work and 1,062 warranty claims, and received $776,615.48 from Jayco for those claims;

- registered and/or sent six service technicians to Indiana for training; and

- repeatedly communicated with Jayco in Indiana by telephone, email and mail.

Jayco alleges that Angie Morell subjected herself to specific jurisdiction in Indiana when she:

- requested sales incentives from Jayco, including a watch and ring valued at over $7,900;

- directed potential customers to visit Jayco in Indiana for plant tours;

- directed Jayco to amend production orders to change interior and exterior colors of motor homes for customers for whom Morell ordered Entegra Coach motor homes; and

- requested detailed feature modifications for Entegra Coach motor homes sales from Jayco.

Jayco's trademark, unfair competition, and breach of contract claims don't "arise out of or relate to" any of those contacts. The dealership agreements were executed in Texas, not Indiana, and all of the wrongful conduct alleged occurred in Texas, as evidenced by the following excerpts from the complaint:

> 2. . . . [T]he Entegra Coach trademark and the business conducted under that mark have been threatened by *the conduct of Defendants* which engage in, and continue to engage in, a deceptive scheme where it falsely advertises, markets and represents itself to customers *in Texas* where they are not licensed or authorized to use the Entegra Coach trademark.

> 5. Defendants are flagrantly using Jayco's Entegra Coach Mark in a prominent fashion *to market itself to customers* in and outside Texas, without Jayco's permission . . . .

> 20. Entregra Coach's dealer in the Dallas, Texas area, Motor-home Specialists, complained to Jayco that [National] was selling Entegra Coach motorhomes from [National's] location in Lewisville, Texas.... [National's] actions dilute the Entegra Coach marks, cause confusion within Entegra Coach dealer network and with customers.

> 27. Defendants are engaging in this façade because it knows that it cannot use the Entegra Coach mark in Texas or *legally sell* from the Lewisville location. [National ]-TX and Morell's uses [of] the Entegra Coach marks to sell Entegra Coach motorhomes from Lewisville is a not so veiled effort to violate the Jayco Dealer Agreements, federal trademark law and other laws.
>
> 37. [National's] unauthorized use and marketing of its products using Entegra Coach trademark at the Texas location and thereby conveying a purported sponsorship therewith, results and will continue to result in monetary damage to Jayco's business, loss of goodwill associated with Entegra Coach trademarks and associated business, and may result in the tarnishing of Jayco's image and reputation in the industry amongst the consuming public.
>
> 46. Jayco has objected to Defendants' use of the Entegra Coach at the Texas location. Defendants have refused to cease and desist from such use.
>
> 54. Defendants have infringed Jayco's trademarks by using them in Texas without license, authority or permission.

[Doc. No. 1].

That Ms. Morell requested and received an incentive award for selling 52 Entegra Coach motorhomes in Arizona and Georgia or that she and others corresponded with Jayco about various matters unrelated to the alleged infringement, unfair competition, and breach of contract claims is irrelevant to the issues presented in this case. Where, as here, "the *relevant* conduct occurred entirely in [Texas]…the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. at 1781-82 (quoting Walden v. Fiore, 134 S.Ct. at 1126) (emphasis in original). As in *Walden*, all of the defendants' conduct giving rise to the plaintiff's claims

-13-

occurred outside the forum State. Specific jurisdiction is lacking in this case "regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. at 1781.

Jayco's assertion that venue is proper in the Northern District of Indiana is similarly flawed. It alleges in its complaint that "venue is proper . . . pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Jayco does business [here] and a substantial part of the events and omissions giving rise to the claims asserted herein either occurred in this judicial district or its harm is felt in this judicial district." [Doc. 1 at ¶ 13]. But the proper venue for a civil action is determined under 28 U.S.C. § 1391(b), not § 1391(a), and where a plaintiff does business is not relevant under that section. *See* Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (courts should focus on relevant activities of the defendant, not the plaintiffs). The defendants don't reside here, and as explained earlier, the plaintiffs haven't shown that "a substantial part of the events or omissions giving rise to the claim[s] occurred [in the Northern District of Indiana]", so venue isn't proper under § 1391(b)(1) or (2). Nor is it proper under § 1391(b)(3) because there are other districts in which the action may be brought.

According, the court GRANTS the defendants' motion to dismiss [Doc. No. 24]. All other pending motions — Jayco's amended motion for preliminary injunction [Doc. No. 14], its related motion for limited expedited discovery [Doc. No. 18], and National's motion to stay discovery [Doc. No. 27] — are DENIED as

moot; and the preliminary injunction hearing scheduled for October 4, 2017 is VACATED.

SO ORDERED.

ENTERED:  September 26, 2017 

/s/ Robert L. Miller, Jr.
Judge
United States District Court